No. 668          July 15, 2026          519

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Andrew Joseph HELLMAN,
*Plaintiff-Respondent,*

*v.*

Miranda Rose TUCKER,
*Defendant-Appellant.*

Lane County Circuit Court
24CN01924; A185876

Clara L. Rigmaiden, Judge.

Argued and submitted April 8, 2026.

Lorena Reynolds argued the cause and filed the brief for appellant.

No appearance by respondent.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

O'CONNOR, J.

Reversed and remanded.

**O'CONNOR, J.**

Mother appeals from an order denying her motion to set aside or vacate the judgment of contempt entered against her.[1] Mother raises two assignments of error. In her first assignment, mother argues that the trial court erred when it determined that mother's mistake, inadvertence, surprise, or excusable neglect was not grounds for relief from the contempt order pursuant to ORCP 71 B and C. In her second assignment, mother argues that the trial court erred when it determined that gross inequity was not grounds for relief from the contempt order. On the first assignment of error, we conclude that mother's neglect was excusable pursuant to ORCP 71 B(1). Because that is dispositive, we do not reach the second assignment of error. Accordingly, we reverse and remand for the trial court to exercise its discretion whether to grant or deny relief from the contempt judgment under ORCP 71 B(1).

## STANDARD OF REVIEW

ORCP 71 B(1) provides, in relevant part, "On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect[.]" Whether a party's conduct or inaction constitutes mistake, inadvertence, surprise, or excusable neglect presents a question of law. *Hoddenpyl v. Fiskum*, 281 Or App 42, 46, 383 P3d 432 (2016). "[W]e review a trial court's ultimate decision to grant or deny relief under ORCP 71 B(1) for abuse of discretion[.]" *Id*. In doing so, "we set out the undisputed facts in the light most favorable to the moving party," in this case, mother, and "we accept the trial court's findings of disputed fact, if there is evidence to support those findings." *Union Lumber Co. v. Miller*, 360 Or 767, 769, 388 P3d 327 (2017).

## FACTS

Mother and father were parties to a domestic relations matter, which included a pending modification of custody and parenting time. We refer to that matter as the domestic relations matter. Father, through counsel, filed a

---

[1] Father has not made an appearance on appeal.

complaint that alleged that mother was in contempt of court for willfully disobeying terms of a supplemental judgment issued in the domestic relations matter and requesting remedial sanctions, a motion for an order requiring mother to appear and show cause why she should not be found in contempt, and a declaration in support of that motion. The complaint, motion, and declaration were filed as a new proceeding with a new case number, different from the domestic relations matter. We refer to that new proceeding as the contempt matter.[2]

The complaint asked for an order for mother to show cause why she should not be held in contempt for willfully disobeying the provisions of a supplemental judgment in the domestic relations matter that provided that "[n]either parent shall move [child, K] from [the Springfield School District] without a written mutual agreement of the parties or a Court order."

Father submitted a declaration with the complaint. Father identified the pending motion to modify parenting time in the domestic relations matter and wrote, "My attorney informs me that we will be filing a motion to consolidate both cases." According to father, the parties agreed to the relocation provisions in the supplemental judgment "to address father's concerns related to the instability for [K] caused by mother's frequent relocations and her history of withholding parenting time." Mother violated the supplemental judgment by moving to Albany, Oregon, without father's agreement or a court order and by failing to provide her current address to father, according to father.

On May 3, 2024, mother was served with the complaint, motion, declaration, and an order to show cause signed by the trial court, all of which were filed in the contempt matter. The order to show cause in the contempt matter stated that "[i]t is hereby ordered that [mother] appear before the above mentioned court at Lane County Courthouse * * * at 9:00 a.m. on July 8, 2024." At the same time mother was served with that order, she was also served

---

[2] We refer to the parties as mother and father, because that is how mother refers to the parties on appeal and how the trial court referred to the parties below.

with a separate motion for order to show cause regarding a motion for modification that father filed in the domestic relations matter.

Mother failed to appear at the show-cause hearing on July 8 in the contempt action. At the hearing on July 8, the trial court and father's attorney expressed that they had been surprised to learn that the contempt matter was a separate case from the domestic relations matter. Father presented a *prima facie* case to show that mother had violated the supplemental judgment by moving from Springfield to Albany without father's agreement and without a court order permitting her to do so. The trial court found mother in contempt. The court acknowledged that father had a pending request for modification in the domestic relations matter. As a remedy for the contempt, the trial court awarded father more parenting time with K until father's request for modification in the domestic relations matter was resolved.

On July 10, mother's attorney filed a motion to reopen the record or set a new trial in the contempt matter. On July 12, the trial court entered a judgment of contempt against mother, finding that she was in default for failing to appear at the show cause hearing on July 8 and making the changes to the parties' parenting time that father had requested in the contempt matter.[3] The trial court also denied mother's motion to reopen the record or set a new trial.

On July 25, mother filed a motion for relief from default in the contempt matter. In a declaration in support of the motion, mother set forth the following facts that describe the actions mother took after she was served. On May 3, mother was served with the show cause orders in the contempt case and the domestic relations case on the same day. Father had previously moved for an order to find mother in contempt in the domestic relations case. Mother thought that the contempt issue would be handled in the domestic relations matter, like it had been previously, and she did not realize that there were now two separate matters.

---

[3] The record suggests that father also had requested the same changes in the pending domestic relations matter.

Mother's declaration also stated that mother had hired an attorney in response to being served and that she provided her attorney with case information that she believed would allow her attorney to access all court-related documents and dates, although mother in fact provided only information related to the domestic relations matter. Mother's attorney did not search the Oregon eCourt Case Information (OECI) system for other cases involving mother because she was only aware of the domestic relations matter. Mother believed that her attorney would notify her when she needed to attend a hearing.

In the declaration, mother also wrote that, on July 9, she told her attorney that she believed there had been a court date on July 8. Mother's attorney could not locate a July 8 court date in the domestic relations matter. Mother then sent a copy of the order to show cause in the contempt matter to her attorney, which finally alerted mother's attorney to the separate contempt matter.

Mother also explained in her declaration that she believed she had not violated the prohibition against relocation in the supplemental judgment by moving to Albany. Mother had moved less than 60 miles from Springfield, and K had remained enrolled in the Springfield School District. Mother drove K to and from school when K stayed with mother, mother explained.

On July 30, the trial court granted father's motion to consolidate the domestic relations matters and the contempt matter.

On September 11, at a hearing on mother's motion for relief from default the trial court heard arguments but did not take evidence. The court determined that the summons for the hearing on July 8 on the order to show cause in the contempt matter was "not confusing" and that mother did not establish excusable neglect. The court explained that "most of the case law boils down to *** that parties are expected to exercise reasonable care in managing their legal obligations," and that reasonable care "means knowing when court is set when you're served with paperwork that tells you very clearly in the first two lines when court is set."

Thus, the trial court denied mother's motion to set aside or vacate the contempt judgment.

The trial court entered a written order denying mother's motion to set aside or vacate. In the written order, the trial court included findings that the order to show cause was unambiguous and that it was reasonable to expect mother to read and comprehend the obligation to appear on July 8. Additionally, the trial court determined that mother did not meet the standard for "reasonable care" in managing one's legal obligations when she failed to thoroughly read the summons. Mother filed this appeal.

## ANALYSIS

ORCP 71 permits a trial court to relieve a party from a judgment when there was a "mistake, inadvertence, surprise, or excusable neglect[.]" ORCP 71 B. "A motion under ORCP 71 B(1) may be granted if (1) the judgment was entered by virtue of mistake, inadvertence, surprise, or excusable neglect; (2) the defendant acted with reasonable diligence after learning about the judgment; and (3) the defendant asserts a meritorious defense to the action." *Hoddenpyl*, 281 Or App at 46. Additionally,

> "[w]hen considering a motion for relief from default, 'it is the [trial] court's responsibility to liberally construe ORCP 71 B(1)(a) so as to avoid the harsh result of depriving a party of its day in court. As an aspect of that liberal construction, the [trial] court views the facts in the light most favorable to the party seeking relief from the default.'"

*Id*. (quoting *Saldivar v. Roberts*, 240 Or App 371, 375, 246 P3d 91 (2011)). Here, the trial court determined that mother had failed to establish excusable neglect, and it did not reach the questions of whether mother acted with reasonable diligence after learning about the judgment or whether mother asserted a meritorious defense.

As stated above "whether certain conduct or inaction constitutes 'excusable neglect' is a question of law, and we review the trial court's answer to that question for legal error." *Johnson v. Sunriver Resort Limited Partnership*, 252 Or App 299, 306, 287 P3d 1153 (2012), *rev den*, 353 Or 280 (2013). "[T]he probative issue" when evaluating whether a

party's negligence was excusable "is whether there were reasonable steps taken to respond to the complaint, even if one of those steps was negligently undertaken" and "the process later broke down." *Hoddenpyl*, 281 Or App at 45-46; *see also Johnson*, 252 Or App at 306-07. In contrast, "when a defendant did not take any reasonable steps to respond to a complaint, we have held, the defendant's neglect was inexcusable." *Id.*

We have held that a party's conduct was excusable neglect when an insurance adjuster who worked for a defendant's insurer misread a notice of intent to take a default judgment that was accompanied by a copy of the summons and complaint to instead be a courtesy copy of a summons and complaint that had not been filed. *Terlyuk v. Krasnogorov*, 237 Or App 546, 550, 240 P3d 740 (2010), *rev den*, 349 Or 603 (2011). As a result of that mistake, the adjuster did not refer the matter to defense counsel, because under the insurer's claims handling process, a file was referred to litigation only after actual service of the summons. Thus, the insurer did not take action on the defendant's behalf to timely appear and defend the action and a default judgment was entered against the defendant. *Id*. We explained that "[a]lthough mistaken, the adjuster's conduct was neglectful in the sense that she failed to carry out the responsibilities of her job." *Terlyuk*, 237 Or App 546. "Her actions were not a deliberate disregard of plaintiffs' claim or a failure to act, but a failure to take the correct action." *Id*. at 555.

Additionally, we have held that there was excusable neglect when a defendant's attorney attempted to respond to a complaint but sent the response to the wrong address. Mailing the response, albeit to the wrong address, constituted a reasonable step to respond to the complaint and thus was excusable neglect. *Hoddenpyl*, 281 Or App at 46.

Applying those principles here, we conclude that mother took reasonable steps to respond to the contempt complaint and, therefore, mother's conduct constituted excusable neglect.

When mother was served with the show cause orders in the contempt and domestic relations matters, mother hired

an attorney to respond. Mother mistakenly assumed that all the documents related to the same matter. That mistake was reasonable. The contempt matter arose from a supplemental judgment in the domestic relations matter, and the show cause order in the domestic relations matter involved the same underlying facts—mother's move from Springfield to Albany. Previously, when a dispute arose about mother moving, father had asked the trial court to hold mother in contempt in the domestic relations matter. Indeed, the trial court and father's attorney expressed that they had been surprised that the contempt matter was separate from the domestic relations matter at the start of the July 8 hearing.[4] The trial court consolidated the contempt and domestic relations matters after entering the default contempt judgment against mother, while the request for modification was still pending in the domestic relations matter. For those reasons, mother's mistaken belief that the contempt had been filed in the domestic relations matter was reasonable.

Mother also mistakenly believed that her attorney would access and see all relevant case information and appearances on OECI. Mother's attorney's failure to access the case information for the contempt action was a "breakdown in the process" that stemmed from mother's failure to provide all of her case documents or case information to her attorney. Mother's failure was negligent. She should have carefully reviewed the documents, provided all the documents to her lawyer, and checked in with her lawyer about the July 8 court date listed on the summons. The question is whether her negligence was excusable. And, like sending a response to the wrong address in *Hoddenpyl* or misreading the notice of intent to take a default judgment in *Terlyuk*, mother's mistaken belief that she did not need to provide

---

[4] The Uniform Trial Court Rules (UTCRs) in effect at the time that father initiated the contempt matter provided that "[i]f a party is initiating a contempt proceeding under ORS 33.055 (remedial) and a related circuit court case exists, the party must initiate the contempt proceeding by filing a motion in the related case." UTCR 19.020(2) (effective Aug 1, 2023). That provision was removed from the version of the UTCRs that went into effect on August 1, 2024, shortly after the trial court entered the default judgment against mother. It does not appear that father initiated the contempt proceeding by filing a motion in the domestic relations case. Mother, however, does not rely on the UTCR, and we thus do not rely on it when evaluating whether her failure to appear on July 8 was excusable neglect.

her lawyer with more information because there was only one case—the domestic relations case—and that her lawyer would notify her of upcoming court appearances because her lawyer knew of the domestic relations case was excusable neglect.

In finding that mother did not take reasonable steps to respond to the contempt action, the trial court focused on the fact that mother had read that there was a hearing on July 8 and failed to attend that hearing, and it determined that that was not excusable. However, as we held in *Terlyuk*, a party's negligent misunderstanding of the significance of a pleading may constitute excusable neglect when the party took reasonable steps based on their misunderstanding. In this case, mother held the mistaken belief that there was only one matter, and she hired an attorney to represent her and respond in that matter, which was a reasonable step. Mother, through counsel, responded in the domestic relations matter to the same allegation underlying the contempt matter, at the same time as the contempt matter proceeded without her or her attorney's knowledge. This is not a case where the party seeking relief from default simply ignored the court. Like the excusable neglect in *Terlyuk*, mother's "actions were not a deliberate disregard of [father's] claim or a failure to act, but a failure to take the correct action." *Id.* at 555.

Therefore, we reverse and remand for the trial court. On remand, the trial court should determine whether mother satisfied the other two requirements of ORCP 71 B(1). *See Hoddenpyl*, 281 Or App at 46 (setting out requirements for ORCP 71 B(1) motion). If mother did so, the court should decide whether to exercise its discretion to grant relief from the contempt order under ORCP 71 B(1).[5] Thus, we reverse and remand for the further proceedings consistent with this opinion.

Reversed and remanded.

---

[5] Based on the record before us, there does not appear to be a reason for the trial court to exercise its discretion to deny relief. *See Hoddenpyl*, 281 Or App at 46 n 3 (noting that under the circumstances of that case, "if [the] defendant established excusable neglect, there was no reason for the [trial] court to exercise its discretion to deny relief"). But we are mindful that the trial court did not have an opportunity to exercise its discretion and thus the record before us may not reflect the entire range of circumstances relevant to the trial court's exercise of discretion.